Chief Justice Robertson
delivered the Opinion of the Court.
Samuel Graves having, in 1827, bought at a sheriff’s sale, twelve acres of the land of Robert Dugan, the defendant in the execution, and having afterwards,in 1832, obtained a conveyance from the sheriff of the title thereto — Dugan filed a bill in chancery, alleging that the purchase was made at his instance, and for his benefit, and with his money, and therefore praying for such relief as those facts would entitle him to demand from a court of equity.
Graves, in his answer, denied that he had bought the land for Dugan, or that Dugan had either paid to the sheriff or to him (Graves) the price bid for it, or any part thereof.
But, on the final hearing, the Circuit Court decreed that the sheriff’s deed to Graves should be set aside and held to be null and void.
To reverse that decree, this appeal is prosecuted.
Had there been sufficient evidence of a resulting trust, the only appropriate decree would have been one directing Graves to execute the trust, by conveying to D ugan the title acquired by himself.
But such a resulting trust as that claimed in this case, should be established by clear and convincing evidence of the only fact from which it could have arisen by im *332 plication of law: that is, the payment by Dugan, of the money in consideration of which the conveyance was made to Graves by the sheriff. And the record exhibits no such evidence. The only judicial inference favorable to Dugan, which the facts, as now exhibited, will allow, is that, after Graves had paid, in the clerk’s office, the amount of the bond he had given to the sheriff for the price of the land, Dugan reimbursed him, in pursuance of a verbal understanding between them, that the land should be held in trust, subject to redemption by such a payment.
If the purchaser paid for the land with bis own mo ney, and the defendant in the execution after-wards refunded it to him, the law would not, on' that ground, imply any trust in the case — altho’ the money was, in fact, so refunded, upon an agreement to permit the defendant in the ex on to keep the land. Such an agreement cannot be enforced, unless it is in writing— because of the statute of frauds. The complainant,however, (de fendant in the ex ecution) upon a prayer for general relief — is entitled to a decree for a return of the money (or value of the commonwealth s paper) he paid to the pur chaser, with, interest upon it.
But a trust did not result by implication of law, from the fact of such a payment to Graves, after he had paid the sheriff with his own money; nor could any trust, created by an oral agreement merely,be enforced against Graves,consistently with the statute of frauds and perjuries, when, by denying the existence of any contract, he imposed on Dugan the burthen of proving such an one as the statute prescribed.
The decree is therefore erroneous.
Nevertheless, Dugan is entitled, under his general prayer for relief, to a decree for a restitution of whatever sum he paid to Graves, if he has shown satisfactorily that he did pay, as alleged in his bill, the amount of Graves’ bond to the sheriff, in execution, on his part, of a verbal agreement that, by doing so, he should be entitled to the land.
And therefore, in remanding the case to the Circuit Court, we must decide whether a just claim to any such equitable relief has been established by Dugan.
Upon this point, there is an apparent and somewhat vexatious discrepancy in,the testimony.
First. It is' indisputably proved that, about the 1st of January, 1829, nearly a year after the bond to the sheriff had become due, and had probably been paid, Dugan, in company with Graves, borrowed from one Whitaker, a hundred dollars, mortgaged his entire tract of land as security, and, on the same day, paid, either to Graves or to his use, in the clerk's office, a sum about equal to that for which the bond had been given to the sheriff.
Second. Graves not only did not obtain or ask for a deed from the sheriff, for 'more than four years after the *333 sale of the land, but permitted Dugan, during that whole time, to occupy and rent it out for his own benefit; frequently admitted that he had bought it for Dugan’s benefit, and superintended the renting of it by him and for his use.
Third. When Dugan paid the money in the office, Graves surrendered to him a bond which, according to the testimony of two unimpeached witnesses, had probably, almost certainly, been given to him when he bought the land, as a supplemental security for his liability for the amount which he was bound to pay to the sheriff.
Fourth. 'One credible and 'unimpeached witness testified that he was present when Dugan paid the money in the office, and that it was paid-on account of the land, and that the small balance remaining of the hundred dollars borrowed from Whitaker, was then paid to Graves, in 'discharge of a small note he held on Dugan; and Whitaker, another witness, swore that Dugan borrowed the hundred dollars for the purpose of paying some debt in the clerk's office.
Moreover, the conclusions to which the foregoing facts conduce, are fortified by several other facts affirmed by other witnesses.
On the other hand, several witnesses deposed to declarations made, in Graves’ presence, by Dugan, indicating an admission that the money he had borrowed from Whitaker had been paid to Graves on account of a small note fie. had held as assignee upon him, and of a debt he owed him for borrowed money.
But the apparent effect of this evidence — so inconsistent with the positive testimony of some of Dugan’s witnesses, and with the deductions from several important facts proved by those witnesses, is, in no slight degree, impaired by other circumstances, not yet noticed.
First. Dugan seems to have been a very imbecile and intemperate man — who made Graves the depository of his confidence, and his general curator and adviser; he was unmarried, and lived with a sister and brother-in-law of Graves; one witness testified that Graves had said that, if he should hold the land; he had promised to *334 give it to that sister; she and.her husband were his principal witnesses; he had evidently much influence over Dugan; the admissions relied on by Graves were general and vague, and were apparently extorted by Graves, and when Dugan was under the influence of intoxicating drink.
Graves has not, in any other more direct or satisfactory manner, attempted to prove, either that Dugan owed him for borrowed money, or how much, or when loaned, or that he, as assignee, held a note upon Dugan, or for what amount, or when given, or assigned, or due. Although he denied in his answer that Dugan had paid any thing on account of the land, he did not intimate that what he had paid him, was for borrowed, money, or an assigned note. One of his own chief witnesses, in answer to a question propounded by himself, testified that, as he understood, the money paid by Dugan was afterwards, paid by Graves in discharge of his bond for the land sold to him by the sheriff, although the clerk testified that the bond had been paid off in his office about a year prior to the loan from Whitaker to Dugan. There appears to have-been no motive for paying the money in the clerk’s office, unless the object of the parties in going there, was to ascertain from a calculation, to be made on the bond there deposited, how much was to be paid by Dugan for the land. Although Graves had procured some vague admissions from Dugan, he was not able to induce him to exchange with him receipts in full discharge of all claims. He admitted, in his answer, that he had promised that Dugan should keep the land upon condition that he would pay one hundred dollars. And though he attempted to prove that, in answer to questions propounded by himself, Dugan had admitted that he owed him for money loaned and a note assigned before the date of the sheriff’s sale, yet a witness testified that, about the time of the sale, they had a settlement, on which the balance was in favor of Dugan.
Considering these and other circumstances, too various and minute to be even suggested here, and weighing with proper discrimination all the opposing facts *335 and probabilities — after a careful analysis, and upon full consideration, we feel authorized to conclude that Dugan refunded to Graves the amount he had given for the land, long before Graves had obtained the sheriff’s deed; and that he is therefore entitled to a decree for restitution of the value of the Commonwealth’s paper thus paid, to be estimated on the first of January, 1832, and interest also on that value from the same time.
Wherefore, the decree is reversed, and the cause remanded for a proper decree according to this opinion.