CHANCERY.              **Wallaces** *vs* **Marshall, &c.**

*Case 46.*            APPEAL FROM THE FLEMING CIRCUIT.

*Trusts. Femes covert. Remainders. Purchaser's lien.*

*January 18.*    JUDGE BRECK delivered the opinion of the Court.—Chief Justice Marshall did not sit in this case.

Case stated in the bill.

THIS was a suit in chancery, brought by Mark Wallace and Benjamin Wallace and wife, claiming an interest under the will of Thomas Wallace, deceased, in a tract of land, with valuable improvements thereon in and adjoining the town of Flemingsburg, the title and possession of which they allege had been improperly and fraudulently obtained by Martin P. Marshall.

The Court below dismissed their bill with costs, and they have appealed to this Court.

The bill alleges in substance—that the property in contest had formerly belonged to the heirs of W. P. Roper, and was sold as such, by a commissioner under a decree of the Fleming Circuit Court, in 1836, and one Heddleson became the purchaser, at the price of $5,000, payable in one and two years. That shortly afterwards Heddleson sold it, or the benefit of his purchase, to Thomas Wallace, who undertook, as the consideration, to meet Heddleson's payments to Roper's heirs, or the commissioner.

In 1839, it is alleged that Wallace's mind became greatly impaired, so much so, as wholly to incapacitate him for the management of his affairs, and so continued till his death. That Dr. F. A. Andrews, who had married Wallace's daughter, and only child, assumed the management of his estate, and obtained possession of notes due him, to the amount of $40,000, out of which he discharged Heddleson's liabilities to Roper's heirs for the property in contest, and squandered the residue. That in March, 1840, Andrews, as attorney in fact for Wallace, but without authority, assigned Heddleson's obligation to him for a title to his brother, N. S.

Andrews, who filed his bill against Wallace, Heddleson, &c., and obtained a decree and conveyance, through a commissioner from Roper's heirs; and thereupon immediately conveyed the property to Dr. F. A. Andrews. The decree, directing a conveyance to be made to N. S. Andrews, was rendered in September, 1840, and at the same term the deed was made and acknowledged by the commissioner, approved by the Court, and ordered to be recorded. At a subsequent term, in November following, the decree, by consent, was opened and Heddleson permitted to file his answer.

Thomas Wallace died in December, 1840. In March, 1841, a further decree was rendered, confirming the previous decree and conveyance. In June, 1841, executions against Andrews to a large amount, and among them one in favor of Marshall, for about $1,200, were levied upon this property, and the same was sold and purchased for about $300 by Marshall, who obtained a deed from the Sheriff, and the possession. Of all the foregoing alleged facts in regard to the title of Andrews, the complainants charge that Marshall, at the time of his purchase, had notice.

The will of Wallace was admitted to record, and upon the death of his daughter, without issue, in July, 1841, the wife of complainant, Benjamin, and those under whom complainant, Mark, claims, became entitled, under the will, to a portion of the testator's estate, all of whom were at the time residing in Ireland.

The complainants allege, that not long after they came to the United States and to the county of Fleming, Marshall filed his bill against them and others, to perpetuate testimony. That during the pendency of this suit, being strangers in the country, and averse to litigation, ignorant of the law, and in ignorance and mistake of important facts, and more especially of the fact that the whole of the consideration for the property had been paid by Wallace, or with his means, instead of one half having been paid by Andrews, and with his own means, as averred by Marshall. Influenced, moreover, by the advice of counsel who were also ignorant of the facts, or not well advised as to the

law, and in view of the wealth and influence of their adversary, they were induced to compromise with Marshall, and to surrender their interest, more than one half of the property, for the grossly inadequate consideration of $300. That afterwards they executed a a deed to Marshall, but which was not so authenticated by the wife of the complainant, Benjamin, as to pass her interest, being one fourth. They insist that this compromise and conveyance, were fraudulently obtained by Marshall, who concealed and suppressed material facts in his knowledge, and urged legal positions which he knew could not be sustained.

They moreover allege, that as to one twelfth of his estate, Wallace died intestate. That all his personal estate had been squandered and exhausted. That decrees against his devisees and heirs, for large sums, had been obtained by Stewart and Paxton, which the complainants had paid. They claim a right to substitution, and to subject the undevised one twelfth of the estate in controversy, and such further portion thereof as may be necessary to satisfy said decrees. And if this cannot be done, they pray that the other devisees may be decreed to contribute.

They make Marshall, all the heirs and devisees, trustees and administrator of Marshall, and the heirs of Andrews, defendants.

They pray that their agreement of compromise, and deed to Marshall, may be cancelled and set aside. That the case of N. S. Andrews against Wallace, &c., may be reviewed—the decree and conveyance set aside—the sale under which Marshall purchased quashed, and the conveyance to him annulled.

Marshall answers, and denies every allegation of fraud, concealment or misrepresentation. He denies overreaching the complainants, or taking advantage of them in any way in regard to the compromise. He denies that they, or their counsel, were ignorant at the time of any material facts, upon which they now rely.

He admits, that prior to his execution purchase, he examined the papers in the chancery suit of N. S. Andrews against Wallace, &c. He states that after his

The answer of
Marshall.

purchase, his attention was called to the reputed mental imbecility of Wallace. That he believes it was generally known that his mind was affected, but to what extent he was not apprised. That doubts existed as to the title of Andrews.

He insists that Wallace purchased the property for his son-in-law, and gave it to him while in sound mind. That Andrews paid one half the purchase money, according to the arrangement between him and Wallace. He denies the alleged fraud on the part of Andrews in procuring the title.

The proof in the cause very satisfactorily establishes the following facts: That Wallace purchased, or openly avowed that he purchased the property for Andrews, and with the agreement or understanding that the latter was to pay one half the purchase money. That Andrews obtained the possession, and claimed and treated the property as his own. That Wallace repeatedly disclaimed having any interest in it, or right to control it, invariably stating that it belonged to Dr. Andrews.

*The proof in the case.*

The first payment was made by Wallace—the second was made by Andrews, and as he proves, with his own money. It however appears that he was insolvent when he married the daughter of Wallace; and that by the use of the means of Wallace, who was a man of wealth, he obtained credit and traded largely in stock and otherwise. It also appears that he used and wasted the funds of Wallace to a large amount, while acting as his agent or attorney in fact.

Wallace became incapacitated to manage his business in 1839, and so continued till his death. It is not shown that Andrews had any authority, written or parol, to assign the bond of Heddleson to N. S. Andrews.

In the state of case thus presented, the first question for consideration, is whether the Circuit Judge was right in dismissing the complainant's bill, so far as it sought a rescission of the contract of compromise with Marshall, and a cancelment of the conveyance to him by the complainants.

The decree in that respect, so far as the complainants, Mark and Benjamin, are concerned, we think, is right, and ought not to be disturbed. We have been unable to discover any thing in the conduct of Marshall, justifying the imputations of fraud. It is not shown that he misrepresented or concealed any material fact in reference to the transaction. It is true, he contended that the payment of nearly $3,000 of the purchase money by Andrews, was a fact deserving consideration, in determining upon the validity of his title, or the value of his interest in the premises. This argument, he admits, was urged then as now, in good faith. The counsel of the complainants, with a knowledge of all the facts, deemed it worthy of consideration; but to what extent, if any, that fact would sustain the title acquired by Marshall, or whether he acquired a lien upon the premises for the purchase money thus paid by Andrews, we will not here stop to inquire. It is sufficient that such payment was at the time established by the testimony of Andrews himself and others, and was deemed, honestly deemed by Marshall important. If upon a full investigation of all the facts and the law of the case, it were even conceded that the complainants' claim were valid, still we are not satisfied the decree should be disturbed on account of the compromise.

Inadequacy of
consideration a-
lone not a ground
for cancelling a
contract.

The mere inadequacy of consideration would not justify the rescission. If made without fraud, and fairly, as we think this was, the Chancellor ought not to interfere, upon that ground alone. Besides, months after the compromise, and after the complainants had had ample time for deliberation, and of becoming familiar with all the facts, they executed a deed conveying any interest they might have in the property.

But it is insisted that the wife of the complainant, Benjamin, being a devisee, and having an interest which her husband could not dispose of, and the deed to Marshall not being so authenticated as to pass her interest, the Court erred in dismissing the bill absolutely as to her. The propriety of dismissing the bill, regarding it as a bill of review or as an original bill, seeking relief against the title acquired by the proceeding in the name

of N. S. Andrews, is also raised by other devisees, who were parties by cross errors.

As a bill of review, we think it cannot be sustained for any error apparent upon the face of the decree or the proceedings. Wallace was a party, and duly served with process. Whether he died before the last order was made, from the record in that case does not appear. Nor does it appear that he labored under any mental incapacity—nor does the record show that F. A. Andrews was a necessary party.

But it is contended, that as Wallace, in point of fact, died in December, 1840, as is shown in the record before us, and as there was no revivor against his representatives, the decree should for that error be reversed.

At the September term, 1840, a final decree was rendered in the case, directing a commissioner to convey all the interest and title of the heirs of William P. Roper to the complainant by deed with special warranty. The deed was made accordingly, duly acknowledged, approved by the Court, and ordered to be recorded, and the parties hence dismissed without day.

At a subsequent term in November, the following order was made: "By consent of the parties, by their attornies, it is ordered that the decree rendered in this cause at the last September term of this Court be opened, and the defendant, John Heddleson, produced his answer, which by consent, is ordered to be filed, and the cause is continued until the next term."

At the March term, 1841, as we have seen, a further decree was rendered, confirming the former decree and conveyance, and stating it to be with the same force and effect as though the decree had not been opened.

As the whole case was finally disposed of at September, it is contended the Court had no further control over it at a subsequent term. It becomes important then, to inquire as to the effect of the order made at the November term, 1840, and also the final order in March following.

It is very clear that no cause was made out, authorizing the Court to disturb the decree of the September term, and that the order of November can only be sus-

WALLACES
vs
MARSHALL, &c.
at a subsequent
term. A decree
against a party
who is dead, is
not binding upon
his heirs or rep-
resentatives.

tained upon the ground that it was made by consent of the parties. Upon that ground, however, we perceive no available objection to it. The order to open the previous decree, was in effect to set it aside, and place the case in the same condition as if it had not been rendered. If this view is correct, it follows, as Wallace died before the final decree at March, that his representatives would not be concluded by that decree, and that no title or interest which he had, passed by it or by the deed.

The question then arises, whether the representatives of Wallace, or the complainants, are shown to to have had such an interest in the suit, or in the land decreed to be conveyed, as entitles them to maintain this suit, and to any relief. As the complainants, Mark and Benjamin, have transferred all their interest in the property in contest to Marshall, they have now no interest in the matter, and could not maintain this suit, except upon the ground that they are entitled to be substituted to the rights of Stewart and Paxton, alleged creditors of Wallace, and that question will be more particularly noticed hereafter. But the complainant, Mary Ann, the wife of complainant, Benjamin, was a devisee under the will of Wallace, and apart from the claim of F. A. Andrews or Marshall, is entitled to a fourth of the property in contest. Not being a party, and not concluded by the decree in the case of N. S. Andrews, she has a right, we think, to set up her equitable claim, and to seek relief against the effect of it. And even if the decree and conveyance of September, 1840, were not affected by the subsequent proceedings, still upon the alleged ground of fraud, the Chancellor would take jurisdiction, and if established, grant appropriate relief.

Whether the bill, therefore, in this case be regarded as a bill of review, or in the nature of a bill of review, or as an original bill, assailing the decree upon the ground of fraud, we think it is sufficient to give a Court of equity jurisdiction, and that such a case was made out as entitle the complainant, Mary Ann, to relief.

The assignment by Andrews to his brother was made, so far as appears, entirely without authority. It was moreover made when Wallace was laboring under utter mental imbecility. Andrews had at the time no claim to the property, which he could render available in law or equity.

There was no equitable resulting trust to even a moiety of the property, which, as the record now stands, he could establish. Wallace was the sole vendee in the purchase, and was alone responsible for the purchase money. The parol agreement or understanding between him and Andrews, that he would make the first payment, and that Andrews was to make the second, and was to have the property, was after the purchase. The declarations of Wallace that he purchased it for Dr. Andrews—that the property belonged to him—and the fact that he took possession of it and controlled it as his own, do not vary the case. They were not obligatory upon him, neither legally, nor in view of the subsequent profligate and reckless course of Andrews, *in foro conscientiæ.*

The parol promise of a father-in law to give his son-in-law land upon his paying part of the price not binding upon his heirs or devisees; and if the part payment by the son-in-law was with the means of the father-in-law there was no pretext for a lien to that extent.

But from the facts of the case, there was no resulting trust, even if it be conceded that Andrews made the second payment with his own money, and which he acquired wholly irrespective of the means of Wallace. This conclusion is abundantly sustained by authority: *Seward* vs *Johnson,* (8 *Cowan,* 406; 2 *John. Chy.* 209;) *Graves* vs *Dugan,* (6 *Dana,* 331.)

It is true if the payment had been made by Andrews as supposed, he might have acquired a lien therefor upon the property, and upon that ground, having obtained the legal title, the Chancellor might refuse to compel him to surrender it till he was reimbursed the amount thus paid.. But it is manifest, and the fact is frankly admitted by the counsel, that all the resources of Andrews were derived mediately or immediately from Wallace, and that he squandered immense sums derived from his estate. It is equally clear, that although Andrews regarded the second payment to Heddleson or Roper's heirs for the property, as made with his own money, that in point of fact, it was made with the money of

Wallace. When he assigned to N. S. Andrews the bond of Heddleson and obtained the legal title, he had squandered of the estate of Wallace, while managing his affairs, near forty thousand dollars, and was even then, apart from any liability to Wallace, hopelessly insolvent.

This large amount, or much of it, was wasted while Wallace was laboring under hopeless mental imbecility. Under all these circumstances, if Wallace had been living and had appealed to the Chancellor to compel a surrender by Andrews of the legal title thus acquired, can a doubt exist that such an appeal would have been successful? We apprehend not. We are unable to perceive any objection or valid ground, legal, equitable or moral, upon which such relief could be withheld. The payment made by Andrews, under the circumstances, would clearly present no obstacle.

In view of all the circumstances, we are also of opinion that Marshall could not successfully resist such an appeal for relief. It is true he has acquired the legal title, and we think without fraud on his part. But he has acquired it under such circumstances as would forbid, in good conscience, his retaining it. He admits that the imbecility of Wallace was known at the time of his purchase, but to what extent he had no personal knowledge. He supposed it was better known to the Judge and the bar than himself. He admits that much doubt existed as to the title of Andrews, and as far as he consulted the resident lawyers of Fleming county, they deemed his title bad. That the objection to it at that time, was the want of authority on the part of Andrews, to assign the title bond from Heddleson to Wallace. But upon an examination of the record in the suit of N. S. Andrews, he could perceive no valid objection to the decree in his favor, and as he had conveyed the property to F. A. Andrews, he was willing to bid for it, but with the sole view of saving his debt. That he relied, moreover, upon the fact that Wallace when in sound mind, had given the property to Andrews, and put him in possession, and that the latter had paid near $3,000 of the purchase money; and that in

obtaining the title, he had only obtained what morally and in good faith on the part of Wallace, he was entitled to.

It may also here be remarked as conclusive evidence of the almost universal impression that the title of Andrews was defective and worthless, that although a great number of persons were present at the sale, and executions against him to large amounts, were in the hands of the officer, yet there was no competition in bidding for the property. Marshall was himself the only bidder and became the purchaser at the comparatively small sum of $300.

From these facts and circumstances thus admitted and appearing in the record, it seems to us that Marshall does not occupy the attitude of an innocent purchaser without notice.

He had notice that the bond from Heddleson to Wallace had been assigned by Andrews without authority, and that by virtue of such unauthorized assignment alone, he had obtained the legal title. He had also, notice of Wallace's imbecility, and as he examined the record in the suit of Andrews, the presumption, under all the circumstances, should be indulged, that he was aware that Wallace had died before the final decree in that case was rendered, and consequently that neither he nor his representatives were, at the time, before the Court. He had also notice of the insolvent condition of Andrews, and cannot be presumed to have been ignorant, and of the immense waste he had committed of the estate of Wallace.

The fact that he considered the property as belonging to Andrews, that he had obtained the legal title and that it was subject to execution, is not in a legal or equitable, although it might be in a moral point of view, at all important. It is not the construction which he put upon the facts within his knowledge, but the facts themselves and the construction and effect which the law gives them, that must determine his attitude.

But it is insisted that although he should be regarded as occupying no better attitude than Andrews, he is still entitled to be reimbursed the amount paid by Andrews,

A purchaser with notice from one having no title which can be in-

WALLACES
vs
MARSHALL, &c.

forced, is not in any better condition than the vendor.

before he should be required to surrender the title. In answer to this position it need only be remarked that we have already seen that such a claim on the part of Andrews himself, would be wholly unavailing. He had no equity to be reimbursed funds which it is perfectly manifest, in any view of the case, he had derived from the estate of Wallace. But even if the fund had not been so derived, his claim for reimbursement would have been successfully met by his insolvency and his indebtedness to Wallace in a far greater amount. If Marshall then would have been compelled unconditionally to surrender the title to Wallace, no reason is perceived why his representatives are not entitled to the same measure of relief.

A *feme covert* devisee in remainder, whose husband had conveyed, asserted her right in remainder and her claim sustained by the Chancellor.

It results that the Court below, instead of absolutely dismissing the bill as to the complainant, Mary Ann, should have decreed the defendant, Marshall, to convey to her such an undivided interest in the Roper property in contest, as she is entitled to as a devisee under the will of Thomas Wallace, subject however, to such life estate therein, as he acquired under the conveyance from her husband, Benjamin. The complainants, Mark and Benjamin, having conveyed all their interest in the property to Marshall, and the complainant, Mary Ann, having no present interest, there was no liability on the part of Marshall for rents.

In regard to the decrees against the representatives and devisees of Wallace, in favor ef Stewart and Paxton, and which complainants, Mark and Benjamin, allege they had paid off, they failed to manifest their right to any relief. Neither Stewart nor Paxton, who were necessary parties, were made defendants, nor do we discover any evidence of the payment of their demands by the complainants. The bill in that respect, should therefore, have been dismissed without prejudice.

No answer having been filed by any of the defendants except Marshall, and an answer by a guardian *ad litem*, for some infant heirs, they should all, except Marshall, have been dismissed without prejudice to any interest they might have to the property in contest.

The decree is erroneous and must be reversed, and the cause remanded with directions to dismiss the complainant's bill so far as the complainants, Mark and Benjamin, seek a rescission of the agreement of compromise with defendant, Marshall, and the cancelment of their deed of conveyance to him of their interest in the property in contest, but without prejudice as to their claim for the alleged payment of the decrees of Stewart and Paxton. That as to the complainant, Mary Ann, a decree be rendered, directing the defendant, Marshall, to convey to her, by deed with special warranty, an undivided fourth part of the property in contest, subject to such life estate therein, as he acquired by the conveyance of her husband, Benjamin. And as to all the defendants except the defendant, Marshall, that they be dismissed without prejudice to any interest they may have as devisees or heirs of Thomas Wallace, in the property in contest,

As the matters in controversy upon the original bill involved the rights of the defendants, who were devisees and heirs of Wallace, it was error as to them, according to the principles of this opinion, to dismiss the bill absolutely, without qualification or reservation as to their interest. And the cross errors are, therefore, deemed available, and the decree is reversed upon them as well as upon the errors of the complainants.

In regard to the costs in the Court below, as the complainants, Mark and Benjamin, manifested no right to relief, we are of opinion that the costs should be divided between the complainants and the defendant, Marshall; and as to the costs in this Court, as the decree, in effect, is only reversed in part, and in view of the whole case, we are of opinion, between the appellants and Marshall, that the costs be divided, and as between the plaintiffs upon the cross errors and Marshall, that each party pay their own costs.

Decree reversed and the cause remanded for proceedings and decree consistent with this opinion.

*Cord and Boyd* for appellants; *McClung* for appellees.