### ROBERT ABELL, ET AL., *v.* JOHN V. CARTMELL.

**Trustee—Infants—Purchase of Real Estate for Infants.**
Where one member of a family buys in real estate for all at a low price by prevailing on other prospective buyers not to bid for the reason that he wanted to buy to protect infants, such purchaser becomes trustee for such infants, such purchaser has a lien for purchase money advanced by him, but holds the title for the benefit of the infants for whom he bought.

**Notice of Trust by Purchaser.**
One who buys real estate from the holder of the record title thereof, but who has notice that his grantor holds such title for the benefit of infants, takes only the interest of the grantor, and the rights of such infants are not affected by his purchase.

APPEAL FROM UNION COUNTY COURT.

December 10, 1875.

OPINION BY JUDGE LINDSAY:

Mrs. Abell was the owner in fee of a valuable tract of land in Union County. To secure the payment of several debts owing by her husband, she joined with him in the execution of mortgages upon her said land.

Actions in equity were instituted to enforce these mortgages, and after the death of Mrs. Abell, and after her children and heirs-at-law had been made parties to the proceedings, a consolidated judgment of foreclosure was regularly rendered. At the sale made by the commissioner pursuant to that judgment, Phipps, the husband of the eldest daughter of Mrs. Abell, purchased the entire tract of land at the sum of $4,200, less than one-half its value. He represented at the time to various persons who were present for the purpose of bidding, that his object was to bid the land in for the benefit of the infant children of Mrs. Abell, and it was in consequence of these representations that he was enabled to make the

purchase at the price stated. The proof shows that there were bidders present who would have paid the judgment debts for about one-half the entire tract.

It is not questioned that the circumstances attending the purchase of Phipps were such as to constitute him in equity a trusee for the children of Mrs. Abell. Phipps sold and conveyed the land to Cartmell. After the death of the former, which took place a short time after the sale to Cartmell, seven of the eight children of Mrs. Abell instituted this action against the latter. They set up all the facts necessary to establish the existence of the trust upon the part of Phipps, and charge that Cartmell purchased from him with notice of that trust. They seek to have their equitable rights determined and established, and pray for such relief as the circumstances of the case entitle them to receive.

The first material question to be settled is whether the answer of Cartmell is sufficient to put in issue the allegation that he bought with notice of the equitable rights of these appellants, as against Phipps.

The allegation of the petition is that when Phipps made said deed to Cartmell, and long before that, he, Cartmell, knew all the fraudulent facts therein stated aforesaid, and knew well that the land thus deeded to him belonged to these plaintiffs, and knew that Phipps had bid off the land at the sale aforesaid for these plaintiffs' use and benefit, as aforesaid, and that Phipps was holding the land in trust for the use and benefit of these plaintiffs; and they state, notwithstanding defendant Cartmell's knowledge of the facts, and statements herein made long before the deed was made by Phipps to him, that he, Cartmell, fraudulently accepted said deed and took possession of, and still holds possession of said land.

We have here the direct, specific and unmistakable averment that Cartmell, at and before his purchase, knew that Phipps had bid off the land for the plaintiffs' use and benefit, and that he was then holding it in trust for them. It is referred to by Cartmell in this manner. He denies that at any time before his purchase of said land, and taking the legal title thereto, or paying the purchase money thereon, he had any understanding or agreement with Phipps concerning plaintiffs or their right, title or interest in said land, or that he ever had any intimation that plaintiffs, or any of their friends, claimed any right or interest in said land, or any part or parcel in Phipps' purchase; and he here states more solemnly that never until after the deed to Phipps, and in the latter part of the summer of 1870, did he

ever entertain any idea of purchasing said land, and even then the purchase was against his will and made under constraint and to save a debt, and keep from pressing Phipps on a debt incurred in the spring of 1870.

The substance of the denial thus made is the affirmative statement, that he, Cartmell, had no understanding or agreement with Phipps concerning the right, title or interest of the appellants in the land, and that he had, at no time, had an intimation, that they, or any of their friends, claimed any right or interest in it, or any part or parcel of the purchase made by Phipps. It may be true that he had no agreement or understanding with Phipps on the subject mentioned, and that no one had ever intimated to him that appellants or any one for them claimed any right, title or interest, in the land, or in the purchase made by Phipps; and yet he may have known that Phipps bid off the land for their benefit, and was at the time of his purchase holding the title in trust for them. If he had knowledge of either of these facts, he had information enough to put a reasonably prudent man upon inquiry; and his agreements or understanding with Phipps, and his want of information as to whether the infant brothers and sisters-in-law of Phipps, were claiming under a purchase made avowedly for their benefit, are immaterial matters. *Wallaces v. Marshall, et al.,* 9 B. Mon. 156; Strong's Equity Jurisprudence (2d ed.) 400.

As the proof established the existence of all the facts necessary to constitute Phipps a trustee for the appellants, and as the material averment that Cartmell purchased from him with notice of the trust, is not sufficiently controverted by the answer, it results that the judgment dismissing the petition of appellants, and thus denying them relief of any kind, cannot be maintained.

But as the parties to the action, as well as the circuit court, seem to have regarded the answer as good; as the cause was tried and disposed of upon its merits; and as the deposition of Cartmell shows that he is able and willing to make the denial sufficient, and then to verify his answer upon the return of the cause; he should be allowed to amend, unless appellants are entitled to relief upon the proof, without regard to the defect in appellee's pleading.

In the determination of this issue, we will waive the decision of the question raised as to the competency of Cartmell as a witness, and consider his testimony as that of a party to an action legally qualified to testify.

Peter Abell, the father of the appellants, who has no pecuniary

interest in the matter in litigation, swears that some time in the interval between the purchase by Phipps and the sale to Cartmell, he told the latter that Phipps had bought the land at the commissioner's sale for his (Abell's) children. He thinks this conversation took place two, three or probably four months before the purchase by Cartmell. In a second deposition, and after Cartmell had given his deposition and testified to facts inconsistent with some of the circumstances detailed by Abell when first sworn, he says he is satisfied that the conversation was had with Cartmell earlier in the year of 1870 than he had first stated. He says that it took place in an upper room in the storehouse of Cartmell, he thinks as early as April, and states that persons were at the time sitting around the stove in the lower or principal storeroom.

Cartmell swears positively that he had never heard from any one before he purchased from Phipps, that the latter had purchased the land for the Abell children. He does not deny that Peter Abell had the alleged conversation with him, but says that it was had in October, 1870, more than a month after Phipps had conveyed to him. There is testimony in the record conducing in some degree to show that Cartmell is right as to the time the conversation took place. He did not commence to occupy the storehouse till the latter part of May, 1870. His clerks recollect that he and Peter Abell did have an interview in the upper room in October, 1870. They swear that Abell was not at the storehouse after Cartmell took possession in May, 1870, except in August and October of that year.

Some stress is put upon the fact that Abell speaks of the storehouse as "his," Cartmell's, house.

Although Cartmell did not commence business until late in May, 1870, the storehouse was open, and mercantile business was being carried on in it in April, 1870, by a brother of appellee, whom he afterwards succeeded in business. It is, therefore, neither impossible nor improbable that the interview in the upper room of the storehouse may have taken place in April, although Abell may have mistakenly spoken of the house as "his," appellee's. If it took place in the latter part of May, when appellee was in possession of the house, it does not necessarily follow that Abell is mistaken in saying or intimating that there was fire in the stove. Such a circumstance is not so improbable as to be regarded as conclusive of a question growing out of a difference of recollection as to date.

It is doubtless true that the clerks have no recollection of seeing Abell at the storehouse in 1870 except in August and October, and

it is very probable that neither they, nor either of them, did see him at any other time, and this is the most they prove. That Abell speaks of the storehouse as "his," Cartmell's, house, is a matter entitled to but little weight. Abell says that he was in the upper room of the storehouse on several occasions during the year 1870, and that one of them, the time at which he informed Cartmell of the facts attending the purchase of the land by Phipps, was as early or earlier than the month of May.

When the accuracy of the recollection of Abell and Cartmell as to dates is tested, it will be seen that, at the least, the one is as liable to be mistaken as the other. In his deposition given on the 5th day of April, 1872, Cartmell, speaking of his interview with Abell on October 18, 1870, says, "This was the first time that I ever heard it intimated that the Abell heirs or Peter Abell claimed that George Phipps owed them for anything, or that they were interested in the purchase of the land in any way." In his deposition given on the 12th day of September, 1872, he says "that the first person who told him that Phipps had purchased for the Abell children was I. A. Spalding. He told me something about it in my storehouse. I don't remember the date exactly. I think Mrs. Spalding was the first person that ever told me anything about it." In one or the other of these statements the memory of the witness was evidently at fault.

Without undertaking to decide whether Abell, who has no actual pecuniary interest in the matters in controversy, or Cartmell, who has, is most likely to have recollected aright as to the date of an admitted interview, we will examine into the circumstances in proof, outside of Abell's evidence tending to show that Cartmell bought with notice of the trust.

Phipps was the brother-in-law of these appellants, who, with his wife, were the owners in fee of the land when sold by the commissioner. They were infants at the time of the sale. Phipps purchased the land for less than one-half of its value. These facts were all known to Cartmell at and before the time of his purchase from Phipps. Cartmell became the surety of Phipps on the bonds he was required to execute to the commissioner who sold the land. At the time of the sale and the execution of these bonds, he was engaged in business, with Phipps as his partner.

Taking all these facts into consideration, and giving due weight to the further fact that Cartmell was fully apprised of the value of the land, of the price paid by Phipps, and of the relationship exist-

ing between him and the infant owners at the time of the sale and purchase, it is almost impossible to escape the conclusion that Cartmell had some information touching those facts connected with the purchase, and converting Phipps into a trustee, which, to say the very least, were known to every bidder present at the time and place the sale and purchase were made. The legitimate and rational deduction from established facts is strengthened by the fact that there were good and sufficient reasons to induce Cartmell to make the purchase from Phipps, notwithstanding his knowledge of the trust.

Phipps was indebted to him in a sum exceeding six thousand dollars. His health was failing rapidly, and the agreed facts in the record show that witnesses would prove that Phipps was insolvent at the time he bought the land at the commissioner's sale, and also growing worse at the time he sold the land in contest to Cartmell. Appellee, in one of his depositions, attempts to show that he might have secured his debt on Phipps without purchasing the land; but in his answer he says that the purchase was against his will, and made under constraint to secure a debt, and keep from oppressing Phipps on a debt incurred in the spring of 1870.

The legitimate inference to be drawn from these facts, all of which are either uncontroverted or satisfactorily proved, is that Cartmell had notice of the equity of these appellants, and that he purchased notwithstanding that notice, because the purchase was the most available means by and through which to save a doubtful claim against an insolvent and dying debtor. Against this conclusion we have the evidence of Cartmell; but he is met with the evidence of Peter Abell, who swears that he in person notified him of the claim which the appellants are now asserting, long before the date of his purchase.

We are constrained to adjudge that appellants have made out a case entitling them to relief. The character of that relief we will now indicate. They are not entitled to rents. Peter Abell, the father of appellants, was entitled to a life estate in the lands; that estate went to Phipps under his purchase from the commissioner, The law will not hold Phipps bound as trustee for the benefit of these appellants, other than to secure to them such interest as that they held in the land when sold, subject to the paying of the judgment debt. It may have been error to sell any part of their estate in remainder until it had first been ascertained that their father's life estate would not sell for a sum sufficient to satisfy the mortgage debts, but that error cannot now be corrected.

As Cartmell cannot be compelled to account for rents, neither should he be allowed interest on the sum bid by Phipps for the land. Cartmell owns under the conveyance from Phipps and wife, the interest that descended to Mrs. Phipps, being an undivided one-eighth of the land. He holds a lien on the entire tract to secure the judgment of $4,209.18, the sum bid by Phipps at the decretal sale.

On the return of the cause, the chancellor will adjudge a sale of so much of the land as may be necessary to pay said sum. In so much of the tract as it may not be necessary to sell, the seven appellants and Cartmell will each own an undivided one-eighth interest, subject to the life estate of Peter Abell, which is and will remain the property of Cartmell. The appellants will be entitled to their costs in this, and in the circuit court.

We have not considered the store bills due from Peter Abell or his wife to Phipps. If they were Peter Abell's debts, Cartmell gets the benefit of them, to the extent that the life estate of the debtor in the land in controversy is valuable. If they were not so evidenced as to make a charge upon her separate estate, her children cannot be compelled to pay them.

The judgment appealed from is *reversed* and the cause remanded for further proceedings consistent with the principles of this opinion.

*K. Chapeze, J. S. Taylor, W. P. D. Bush, for appellants.*
*John Rodman, Caswell Bennett, D. H. Hughes, for appellees.*